UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

JEAN-CLAUDE TASSY,

                          Plaintiff,                         Civil Action No. 21-CV-577
                                                          (Cogan, J.)

-against-

PETE BUTTIGIEG, Secretary,
United States Department of Transportation,

                          Defendant.

-------------------------------------------------------------------X

## DECLARATION OF JEAN-CLAUDE TASSY

        JEAN-CLAUDE TASSY hereby declares under penalty of perjury, pursuant to 28

U.S.C. § 1746, as follows:

        1.     I am the plaintiff herein. I submit this Declaration in opposition to the

defendant's motion to dismiss my complaint.

        2.     The defendant distorts the factual picture by selectively citing certain facts

while ignoring others.

        3.     I filed a formal charge of discrimination with the Department of

Transportation's EEO office in January of 2019 (Case No. 2018-28053-FAA) based on the

ongoing discriminatory treatment and harassment to which I was being subjected in the FAA's

Farmingdale, New York, Flight Standards District Office, where I worked.

        4.     In February of 2020, the Department ("DOT") made a determination of no

discrimination. I thereafter brought suit in this Court (Civil Action No. 20-cv-2154-BMC). That

case is pending before the Court.

5.     On or about March 6, 2020, shortly after the DOT had issued its determination of no discrimination, my supervisor, Erik Anderson, sent me a memorandum notifying me of my "Proposed Removal," claiming that I had made improper recordings in the office. A copy of that memorandum is annexed as Exhibit A.

6.     The memorandum stated that I could submit a reply, affidavits, and other documentary evidence in regard to "this proposal." Memorandum at p. 5. It said that I had 15 calendar days to submit my reply. Id. It also provided that I could be "accompanied, assisted or advised by a representative of [my] choosing" and that I had "a right to review all of the information relied on to support this proposed action." Id. at pp. 5-6.

7.     The memorandum said that, after my reply was received, Mr. Anderson would "issue a written decision to [me]." Id. at p. 6.

8.     I was shocked and dismayed to receive this memorandum. I was aware that other employees had made tape recordings without disciplinary consequences and I believe that I was being singled out in retaliation for having filed a charge of discrimination.

9.     I consulted with my attorney, Paul Shoemaker, and with my union representative. We had discussions and emails back and forth. I learned that, if I contested the proposed removal and failed, I could lose my pension. I also learned that I might be able to retire immediately which would abate the proposed removal so that my personnel file would not indicate that I was fired for cause and my pension would not be forfeited. Based on that, I determined that I should look into possible retirement while at the same time preserving my rights and preparing a presentation in opposition to the proposed removal.

10.     Accordingly, on March 18, 2020, I sent two e-mails: (1) to the Benefits Operations Center expressing my interest in retirement (copy annexed as Exhibit B) and (2) to Mr.

2

Anderson, requesting all the information relied on to support the action proposed in his memorandum of March 6, 2020. I also requested an extension of my time to submit a reply to that memorandum, noting that: "Due to the disruptions arising from the COVID-19 situation, my efforts to counsel and obtain advice on this matter were delayed." A copy of my e-mail to Mr. Anderson is annexed as Exhibit C.

11.     Mr. Anderson responded at 4:17 pm on March 18, 2020, stating that he would provide the requested information to me and granting me an extension of time to reply until April 6, 2020. A copy of that email is annexed as Exhibit D.

12.     The Benefits Operations Center also replied to me on March 18, 2020, sending an email which stated in part as follows:

> Attached is a complete FERS retirement application packet. <u>When you decide to retire</u>, please use these forms to begin the process.

A copy of that email is annexed as Exhibit E (emphasis supplied).

13.     On March 23, 2020, Mr. Anderson provided me with a list of the information relied upon in connection with his Proposed Removal memorandum and with access to that information. I signed a receipt acknowledging this, a copy of which is annexed as Exhibit F.

14.     I again consulted with counsel and with my union representative and, after further review, discussion and deliberation, I decided to retire rather than contest the proposed removal.

15.     Accordingly, on March 30, 2020, I sent a completed retirement application to the Benefits Operations Center.

16.     They informed me shortly thereafter that my application had been processed and accepted and that I could retire with an effective date of April 3.

17.     I went into the office on April 3, cleaned out my desk, and informed my manager that I was resigning from my position.

18.     On May 6, 2020, I contacted Floretta Cabiness, the EEO Counselor with whom I had been working in connection with my prior complaint, to inform her of my complaint of retaliation. A copy of my email dated May 6, 2020 to her is annexed as Exhibit G.

19.     In that email, I told her that I had filed my retirement papers on April 3 and that April 3 was my last day of work. I need to clarify that statement. April 3 was indeed my last day of work and the day on which I informed management of my resignation. However, as noted previously, I had actually sent my retirement papers to The Benefits Operations Center on March 30, 2020, so my statement that I filed the papers on April 3 was inaccurate. April 3 was the date on which my retirement became effective, not the date on which I filed the papers.

20.     Nevertheless, it is clear that my email to Ms. Cabiness was within 45 days from the date on which I had made my decision to retire and on which I informed my employer of that decision by submitting the retirement application. That date, March 30, 2020, is 37 days before May 6, 2020.

21.     My email to Ms. Cabiness did not "bounce back" to me. However, I did not receive a response to it and I followed up by contacting another EEO Counselor with whom I had had prior dealings, Diana LaDuke, and she got things moving for me.

22.     The DOT acknowledges that my initial date of contact was May 6, 2020 (see page 7 of Doc. No. 8-2 in the Court file).

23.     The defendant mentions this, but insists that my initial contact was on May 15 when clearly it was on May 6.

4

24. After Ms. LaDuke intervened another EEO Counselor processed my new complaint and, after that had been done, I filed a complaint of discrimination with the DOT on July 16, 2020 (DOT Complaint No.: 2020-28849-FAA-01).

25. In response, the DOT sent me a letter dated August 20, 2020 (Doc. No. 8-2, pages 12-13), in which they stated that they were accepting for investigation my complaint that I had been subjected to discrimination when I was constructively discharged on April 3, 2020.

26. Nowhere in that letter or in the EEO Counselor's report did the DOT express any concern about the timeliness of my initial contact with an EEO Counselor. Indeed, the EEO Counselor's report indicates in part C (Chronology of EEO Counseling) as follows: "If initial contact occurred beyond 45 days of the date [of] the alleged discriminatory act and/or personnel action, please explain why. N/A".

27. Finally, I note that the COVID-19 crisis was just beginning and developing during this time period (March and April of 2020). My attorney traveled to Montana on March 17, 2020, and did not return to New York until July. We were not able to meet and consult in person and my communications with him and with the union representative were often delayed because of people traveling, working from home, different time zones, using different telephone numbers, etc.

28. The EEOC issued a Memorandum dated April 6, 2020, recognizing that the COVID-19 crisis "affects all federal employees, complainants, and others involved in the EEO process." A copy of the memorandum is annexed as Exhibit H.

29. The Memorandum specifically acknowledges in the first paragraph on the second page that: "because of the National Emergency, applicants who utilize the EEO complaint

5

process may face challenges that preclude them from meeting the regulatory timeframes set forth in 29 CFR Part 1614."

30.    My initial contact was timely, but even if it was not, the National Emergency circumstances as recognized by the EEOC would justify equitable tolling of the deadline.

31.    In addition, the provisions of the EEOC's Memorandum and the contents of the DOT's EEO Counselor's Report and letter accepting my retaliation complaint, taken together, support the conclusion that the DOT has waived any contention that my initial contact was untimely.

## CONCLUSION

32.    In summary, the timeline of events is as follows:

- February 2020 – DOT rejects my claim of discrimination.

- March 6, 2020 – Mr. Anderson sends me a notice of "Proposed Removal."

- March 6 – 18, 2020 – I consult with counsel and union representative to assess my options and decide on a course of action.

- March 18, 2020 – I send two e-mails: to the Benefits Operations Center expressing my interest in retirement and (2) to Mr. Anderson requesting the information in support of the proposed removal and an extension of my time to respond to his memorandum.

- March 18, 2020 – I receive two responses: (a) from the Benefits Operations Center enclosing a retirement application packet and advising me to use the forms "to begin the process" when I decided

6

to retire" and (2) from Mr. Anderson stating that he would provide the requested information and granting me an extension of time to reply until April 6, 2020.

- March 23, 2020 – Mr. Anderson made the requested information available to me.

- March 23 – 30, 2020 – I consulted further with counsel and my union representative and concluded that I should retire rather than contest the proposed removal.

- March 30, 2020 – I sent a completed retirement application to the Benefits Operations Center.

- Sometime between March 31 and April 3, 2020 – the Benefits Operations Center informed me that I could retire with an effective date of April 3.

- April 3, 2020 – I cleaned out my desk and told my manager that I was resigning.

- May 6, 2020 – I sent an e-mail to EEO Counselor Floretta Cabiness informing her of my claim of retaliation.

33.    My decision to retire was made on March 30 when I submitted my retirement application.

34.    I notified an EEO counselor of my claim of retaliation on May 6, 2020, within 45 days thereafter.

35.     Accordingly, I submit that my claim is timely.

Dated:     Old Westbury, New York
           March 2 2, 2021

Jean-Claude Tassy

# EXHIBIT A



**FAA**
**Aviation Safety**

# Memorandum

| | |
|---|---|
| Date: | March 6, 2020 |
| To: | Jean-Claude Tassy, Aviation Safety Inspector, Farmingdale FSDO, AFG-100/EA-11 |
| From: | Erik F. Anderson, Manager, Farmingdale FSDO, AFG-100/EA-11 |
| Subject: | Proposed Removal |

This is notice that I propose to remove you from your position of Aviation Safety Inspector, FG-1825-12 at $97,517.00 per annum, for unauthorized recording, misuse of government property, and lack of candor. This action will be effective no earlier than 30 calendar days from the date you receive this notice and is proposed for such cause as will promote the efficiency of the Service.

## BACKGROUND:

On August 15, 2019, Farmingdale Flight Standards District Office (FRG FSDO) Aviation Safety Inspector (ASI), Stanley Routh, observed you with what he perceived to be a digital recording device in the office. Mr. Routh reported his suspicion that you were recording workplace conversations to Front Line Manager, Miguel Soto. On August 16, 2019, management conducted a management inquiry where you admitted to recording both in the workplace and in the field. You further admitted that you used both a digital voice recorder (DVR) and your personal cell phone to make recordings, and that you had done so without consent or permission continuously since you started working at the FRG FSDO in 2015. You stated you made these recordings because several guys were speaking rough to you, some of the guys were treating you disrespectfully and attacking you and were getting crazy with you.

On August 19, 2019, Billy J. McKibbon, Acting Manager, General Aviation Division, AFG-100 requested a Security Investigation in response to allegations and your admissions that you had used a recording device to record conversations while on official duty without others' knowledge or permission. The investigation into the allegations resulted in a Report of Investigation (ROI) No. AXI20190617, dated December 6, 2019.

On October 24, 2019, as part of the Security Investigation, you gave a subsequent statement to Special Agent (SA) Jennifer Aszalos. In that statement you contradicted several of your statements in your August 16, 2019 interview with management. However, you affirmed that you had been recording conversations, meetings, field activity, and FAA training, since the time you started working at the FRG FSDO in 2015. In this October interview, you claimed that all recordings had been taken solely on a DVR device and not on your cell phone; but, you could not produce the DVR device because it was allegedly stolen in August 2019. During the October 24, 2019 interview, you admitted that you never reported your DVR device as missing to management. You subsequently reported the device as missing to FLM Soto on November 19, 2019, only after having been asked by SA Aszalos why you had not reported it missing.

Furthermore, an FAA Cyber Investigation was conducted, resulting in report number AXI20190628. This investigation revealed that you had connected the unapproved recording device to your government issued computer approximately seventy-seven (77) times with the latest entry being August 5, 2019.

## REASON 1: Unauthorized Recording

**Specification 1:** Without permission, and in violation of Agency Policy HRPM ER 4.1, Standards of Conduct, since approximately August 9, 2015 through August 20, 2019 you made unauthorized recordings of workplace discussions, office meetings, field activity, and FAA training.

## REASON 2: Misuse of Government Property

**Specification 1:** You connected your non-Government Furnished Equipment, a personal recording device identified as VN-541PC (Olympus DVR), to your Government issued computer through its Universal Serial Bus (USB). This unauthorized device was connected, in violation of FAA Order 1370.121 Information Security and Privacy Program & Policy, to your FAA computer approximately 77 times between October 4, 2018 and August 5, 2019.

## REASON 3: Lack of Candor

**Specification 1:** In your October 25, 2019 statement, you stated you "have never used [your] cell phone to record" colleagues in the FRG FSDO, but rather only used your personal DVR. However, in your August 16, 2019 statement, you advised that you used both your personal cell phone and a DVR to record colleagues in the FRG FSDO. Your conflicting statements regarding the devices used to record demonstrate a lack of candor.

**Specification 2:** During the security investigation, you provided a photo of your personal digital voice recorder (DVR), the Olympus VN-541PC. In your statement dated October 25, 2019, you stated that from 2015 through 2019 you "only used one device to record audio. It was [your] personal device, purchased at Best Buy." Your October 25, 2019,

statement that this was the only device you have used to record audio lacks candor. This particular DVR model was not released until October of 2016.

## DISCUSSION

Before initiating this proposed action, I carefully considered the information contained in the Personnel Management System (PMS), Chapter III, particularly the FAA Factors, Table of Penalties, and other relevant policy and guidance. Your actions were in violation of and inconsistent with the HRPM, ER-4.1, Standards of Conduct, which states:

### 13. Giving Statements and/or Testimony.

a. It is the duty and requirement of every employee to give oral and/or signed statements, as directed, to any manager, Special Agent or DOT official conducting an investigation, inquiry or hearing in the interest of the agency. Such statements must be complete and truthful.

b. When directed by the Administrator (or his/her authorized representative), an employee must take an oath or make an affirmation about his/her testimony or written statement before an agent authorized by law to administer oaths, and the employee must, if requested, sign his/her name to the transcript of testimony, affidavit or written statement which the employee provided. No employee may refuse to testify or provide complete and truthful information pertinent to matters under investigation or inquiry.

c. All employees must give complete and truthful information in response to requests received from Congress, the General Accounting Office, the Office of the Inspector General, the Office of Personnel Management or other duly authorized investigative bodies, regarding matters under their jurisdiction. It is FAA policy to fully cooperate with such bodies in the public interest. If the inquiry concerns the employee's front-line manager, employees must notify their middle or senior manager of any such request.

d. Employees will produce any documentation held by the employee relative to any inquiry or investigation. Employees may not discuss their statements or testimony unless permitted by an authorized official.

### 15. Recording or Monitoring of Telephone Calls or Covert Recording, Videotaping or Monitoring of Conversations, Meetings, etc., b. Unauthorized recordings:

Employees, in the conduct of their official duties, may not use, aid in the use of, or ignore the improper use of, recording, videotaping or monitoring equipment of any

kind. Conversations are only recorded for official purposes, and only with the knowledge and consent of all those being recorded.

Covert/secret taping, either audio or video, of any conversation or meeting occurring at the workplace or conversation or meetings off-site that deal with workplace issues and matters of official concern are prohibited. Examples of such meetings are promotion interviews, EEO meetings with a counselor or investigator, meetings between a manager and a subordinate, etc. This prohibition applies regardless of individual state laws which may permit covert/secret tape recording.

## Misuse of Government Property

Your actions were also in violation of and inconsistent with FAA Order 1370.121 Information Security and Privacy Program & Policy which states:

19. [AC-19] Access Control for Mobile Devices c. All portable and mobile devices used to connect to any FAA computing resources or processing of FAA information must be Government Furnished Equipment [(GFE)], or have the expressed, written consent of the FAA CIO [ Chief Information Officer (CIO)] to use non-GFE prior to their accessing any FAA system or information.

In addition, the FAA Rules of Behavior (FAA Order 1370.121), states: Section 3 System and Data Access Protections B. To protect all systems and data: (2) I will not: a. Use personally owned equipment (POE), contractor-owned equipment (COE), or other non-Government Furnished Equipment (non-GFE) to access FAA information systems and networks or process FAA information unless I am given express written approval from the FAA Chief Information Officer (CIO) or designee. This includes but is not limited to laptops, desktop computers, tablets, thumb drives and other USP devices, printers, cameras, microphones, smartphones, or any device that is not approved for use on FAA systems or network. This information is also contained within eLMS course: FAA Information Security & Privacy Awareness Training (SAT) FAA Course #30050042 which you completed on August 3, 2017 and August 6, 2018.

Additionally, you completed eLMS Course #: 30200131: ER 4.1, FAA Standards of Conduct training on March 14, 2017 and April 27, 2018. You reviewed the Annual Standards of Conduct Briefing for the FRG FSDO on February 23, 2016 and August 28, 2018. Your training record also reflects having taken additional ethics courses as early as 2015 that also cover the Standards of Conduct.

I find your lack of regard for known FAA rules and your coworker's privacy egregious and unacceptable. This was not a mere isolated incident with a specific purpose. Rather, your behavior was repeated and sustained over years. The very fact that you made these recordings covertly indicates that you knew what you were doing was wrong. Then to further compound your activities, you refused to provide a truthful explanation to your management or in the subsequent investigation.

You initially indicated to management that you used your phone and a DVR to record and the purpose of your recordings included recording others' inappropriate conduct and their treatment of you. Later, you advised security officials that you only used recordings for training purposes and you only used your DVR, which was stolen and, therefore, you would not be able to produce the DVR during the investigation. Given the discrepancy in your statements, I find your claim of being under stress in the first interview as explanation of the discrepancies, self- serving and unconvincing. Additionally, you refused to turn over your cellular phone or provide any evidence to verify your claims. Your actions have eroded my trust and confidence in you and damaged the trust between you and your coworkers irreparably. Your actions have had an impact on the morale and efficiency of our office. Your fellow coworkers have expressed concern about working with you because of your covert actions.

The position you hold as an Aviation Safety Inspector, is a professional, safety related position within the FAA. As part of your responsibilities, you are given access to proprietary information owned by FAA regulated Operators, FAA Compliance and Enforcement information, accident investigations, items that fall under the Freedom of Information Act (FOIA), and other Sensitive Unclassified Information (SUI). In your position you work independently and are the face of the FAA when you go out to perform work for the Agency. Your conduct in the aforementioned instances make me question your judgment, credibility, integrity, and honesty.

I consider your conduct in regard to the misuse of government property particularly egregious as it was repeated, approximately 77 times, over a period of approximately 10 months. Specifically, you connected an unauthorized personal device to your government computer and potentially put the FAA's computer system at risk thereby compromising the integrity and security of the system as a whole.

Finally, I have considered your approximately 7.5 years of Service with the FAA as well as your clean disciplinary record. However, your record and service do not outweigh the egregiousness of your behavior, over multiple years, putting the Agency's equipment at risk over and over again. The Table of Penalties, a guide, presents a range of proposed penalties for the offenses you are being charged with, up to and including removal. Based on the facts before me, I find this penalty of removal appropriate given the repeated nature of your conduct over an extended period of time. Your actions were covert and then finally you lacked candor when asked about these matters which has had a detrimental effect on my trust and confidence in you.

You may reply to this proposal personally and/or in writing within 15 calendar days from receipt of this proposal. You may submit affidavits and other documentary evidence in support of your reply. You will be allowed 15 calendar days from the date you receive this letter to submit your reply.

You may be accompanied, assisted or advised by a representative of your choosing. If you desire a representative, the individual you select must be designated in writing. Your choice of representative may be disallowed because of operational demands or if a

6

conflict of interest exists. Should this occur, you will be allowed a reasonable time to select another representative.

Per Article 18, Section 8 of the Collective Bargaining Agreement (CBA), between the FAA and the Professional Aviation Safety Specialists (PASS), you have a right to review all of the information relied on to support this proposed action and shall be given a copy upon request. You and your representative, if an FAA employee, are allowed up to 16 hours, if otherwise in a duty status, to review the material and prepare your reply. Arrangements for the use of official time must be coordinated with me in advance.

Full consideration will be given to any reply you choose to submit. After your reply is received, or after expiration of the fifteen (15) day time limit if you do not reply, I will issue a written decision to you.

In the event that you may have a personal or health problem assistance is available through the Employee Assistance Program (EAP). This is a free and confidential service, and I strongly encourage you take advantage of this assistance. You can seek assistance by calling the EAP Hotline at 1-800-234-1EAP or visiting the EAP website at www.magellanhealth.com/member.

If you have questions regarding this notice, you may contact Susan Schmitz, Employee/Labor Relations Specialist, at 847.294.7740, for assistance.

You are requested to sign and date the acknowledgement copy of this memorandum as evidence that you have received it. Your signature does not mean you agree or disagree with the contents of this memorandum. However, your failure to sign the acknowledgement copy will not void the contents.

I acknowledge receipt:

_____
Name

05/06/2020
Date

# EXHIBIT B

**From:** Tassy, Jean-Claude (FAA)
**Sent:** Wednesday, March 18, 2020 1:48 PM
**To:** 9-ACE-FAA-BENE@faa.gov
**Subject:** RETIREMENT

To whom it may concern

I am interested in an immediate retirement. Please let me know if you need any further information from me and process my request as promptly as possible.

Name: Jean-Claude Tassy.

FSDO EA11,

Farmingdale, New York.

Best Regards,

# Jean-Claude Tassy ✈

 **Federal Aviation Administration**

" *SAFETY IS AN ESSENTIAL PRIORITY* "

Aviation Safety Inspector, Avionics

AEA-FRG-FSDO-11

7150 Republic Airport Suite 235

Farmingdale, NY. 11735

E-mail:  Jean-Claude.Tassy@faa.gov

Phone:  631.755.1300 x262

Fax:     631.694.5516

Click here to provide feedback on our service.

# EXHIBIT C

**From:** Tassy, Jean-Claude (FAA) <Jean-Claude.Tassy@faa.gov>
**Sent:** Wednesday, March 18, 2020 1:22 PM
**To:** Anderson, Erik (FAA) <Erik.Anderson@faa.gov>
**Subject:** MEMORANDUM OF MARCH 6, 2020.

Manager Erik Anderson

I am hereby requesting to review all the information relied on the support the action proposed in your memorandum of March 6, 2020. I also request an extension of my time to submit a reply to the proposed action. Due to disruptions arising from the COVID-19 situation, my efforts to counsel and obtain advice on this matter were delayed and I need additional time to prepare my reply.

Best Regards,

*Jean-Claude Tassy* ✒

 **Federal Aviation Administration**

" *SAFETY IS AN ESSENTIAL PRIORITY* "

Aviation Safety Inspector, Avionics

AEA-FRG-FSDO-11

7150 Republic Airport Suite 235

Farmingdale, NY. 11735

E-mail:  Jean-Claude.Tassy@faa.gov

Phone:  631.755.1300 x262
Fax:      631.694.5516

Click here to provide feedback on our service.

# EXHIBIT D

**From:** Anderson, Erik (FAA) <Erik.Anderson@faa.gov>
**Sent:** Wednesday, March 18, 2020 4:17 PM
**To:** Tassy, Jean-Claude (FAA) <Jean-Claude.Tassy@faa.gov>
**Subject:** Request for Extension

Mr. Tassy.

I will be happy to provide you copies of all the 'information relied upon' this Friday, March 20, 2020 when I return to the office. Also, per your request, I am granting you a fifteen (15) calendar day extension, for the preparation of your response to the issued Notice. Therefore, your response is due to me by close of business, Monday, April 6, 2020.

ErikF.Anderson, Manager

Farmingdale Flight Standards District Office, AFG-100/EA-11
Phone: (631) 755-1300, x200

# EXHIBIT E

**From:** APP-AIT-FAA-Benefit (FAA) <APP-AIT-FAA-Benefit@faa.gov>
**Sent:** Wednesday, March 18, 2020 2:11 PM
**To:** Tassy, Jean-Claude (FAA) <Jean-Claude.Tassy@faa.gov>
**Subject:** FERS Retirement Application Packet

Thank you for contacting the Benefits Operations Center. Our contact information is listed in this email.

The following link will assist when completing the documents below:

https://employees.faa.gov/tv/?mediaId=1931

Attached is a complete**FERS** retirement application packet. When you decide to retire, please use these forms to begin the process. We recommend submitting your completed documents 60-90 days prior to your selected date of retirement:

1. SF-3107, Application for Immediate Retirement. This actually has five different forms within this application (must have original signatures)

   a. Application for Immediate Retirement (3 pages) – must be completed
   b. Schedule A, B, C – Submit this only if you answered "Yes" if you have military service, or are retired military or have applied for Worker's Compensation (OWCP)
   c. Spouse's Consent form (SF-3107-2) – must be completed ONLY if your spouse will be receiving less than a full survivor benefit
   d. Certified Summary (SF-3107-1) –DO NOT COMPLETE
   e. Agency Checklist (SF-3107 Sched D) –DO NOT COMPLETE

2. SF-2818, Continuation of Life Insurance – You must complete if you have life insurance as an employee (must have original signatures)

   a. **Please do not white out, line through or make other corrections to this form**

3. W4P – Current year (if applicable)
4. Marriage Certificate (if applicable)
5. Military DD-214 and Deposit Paid in Full documentation (if applicable)

   a. If you need to get verification of Military Deposit paid in full and it is not in your eOPF, please contact payroll at888-367-1622, Option 3,2.

6. FERS Sick Leave Election form (if applicable)
7. Please include your Supervisor's name and contact information

**Please print these documents single-sided.**
Please mail all original documents to the address below:

DOT/FAA
Benefits Operations Center
901 Locust Street, Room 117
Kansas City, MO 64106

Please be advised if you need documents to be signed for, please send them via UPS or FedEx.
Once we receive your retirement packet, please allow up to two weeks for
a Retirement Specialist to contact you. The Specialist will be your Point of
Contact until you retire. If you have not heard from your assigned
specialists within two weeks let us know.

If you have any other questions, please feel free to contactthe Benefits Operations Centerat 1-855-322-2363,
Monday through Friday, 7 a.m. to 5 p.m., CST.

Respectfully,

Jenelle

Benefits Operations Center
901 Locust Street, Room 117
Kansas City, MO 64106
'1.855.322.2363
9-ACE-FAA-BENE@faa.gov
:my.faa.gov/go/boc

# EXHIBIT F

INFO RELIED UPON: (to be provided to employee upon his request NOT as an attachment)

Report of Investigation No. AXI20190617
FAA Cyber Investigation Report No. AXI20190628
ER 4.1 Standards of Conduct (version 2015 & 2017)
FAA Order 1370.121
eLMS Training History
Rachiele email, dated 8/20/19
DVR manual and manufacturer information
Olympus Global Homepage (September 28, 2016)
Screenshots Search showing VN-541PC is Olympus DVR
November 19, 2019 email (includes photograph attachment) from Tassy to Soto regarding missing device

_____                    03/23/2020
Jean Claude Tassy                              Date Received

# EXHIBIT G

**From:** JEAN-CLAUDE TASSY <thejctass@yahoo.com>
**Sent:** Wednesday, May 06, 2020 12:39 PM
**To:** floretta.cabiness@faa.gov; Paul T. Shoemaker <pshoemaker@gss-law.com>
**Subject:** PROPOSED REMOVAL

"Dear Ms. Cabiness - I have been forced out of my job at the FAA. I was threatened with termination and I retired in order to avoid involuntary termination and possible loss of my pension. I believe that management threatened to terminate me in retaliation for my assertion of the claim of discrimination (Case No. 2018-28053-FAA) with which you are familiar.

I filed the claim of discrimination in January of 2019. Thereafter I continued to perform my job duties and conditions improved a bit at first. In February of 2020, however the Department made a determination of no discrimination.

Shortly thereafter, in March, Erik Anderson, Manager of the Farmingdale FSDO, notified me of my "Proposed Removal", claiming that I had made improper recordings in the office and stating that my termination would be effective no earlier than 30 days from the date I received the notice (which was on or about March 6).

I contacted my attorney and the union representative and we reviewed and discussed the matter and made efforts to avoid termination, but we realized that it was futile and, in order to avoid further proceedings, involuntary termination, and possible loss of my pension, I filed my retirement papers on April 3. That was my last day of work. I had intended to continue working at the FAA for many more years, but was forced to retire because of management's retaliation against me.

Please contact me to confirm receipt of this email and to let me know what the next steps will be. My Representative in this matter will be Paul T. Shoemaker of Greenfield Stein & Senior. He can be reached at 212-818-9600 or pshoemaker@gss-law.com.

Very truly yours, Jean-Claude Tassy"

# EXHIBIT H

 **U.S. Equal Employment Opportunity Commission**

# Processing Information for All Parties in Federal EEO Processing under 29 CFR Part 1614

April 6, 2020

## Memorandum

| TO: | Federal Sector EEO Directors & Officials |
|---|---|
| FROM: | Carlton M. Hadden<br>Director, Office of Federal Operations |
| SUBJECT: | Processing Information for All Parties in Federal EEO Processing under 29 CFR Part 1614 |

In light of the National Emergency declared by the President due to the Coronavirus (COVID-19), the U.S. Equal Employment Opportunity Commission's (EEOC) Office of Federal Operations (OFO) is issuing the following instructions regarding the processing of federal sector EEO complaints covered by 29 CFR Part 1614.

The EEOC recognizes this crisis affects all federal employees, complainants, and others involved in the EEO process. We appreciate the dedication of federal EEO professionals throughout the federal government and we further recognize that the centerpiece of our efforts are the employees, applicants, and former employees who believe they have experienced employment discrimination and access our regulatory process for assistance. Nevertheless, the federal government remains

open and committed to providing mission-critical services to the greatest extent possible, given the limitations inherent in the current environment.

The EEOC also recognizes that, because of the National Emergency, applicants who utilize the EEO complaint process may face challenges that preclude them from meeting the regulatory timeframes set forth in 29 CFR Part 1614.

The EEOC must balance its duty to ensure that the EEO process continues efficiently and effectively, without compromising the safety of federal employees or the rights or safety of complainants and others involved in the EEO process.

The EEOC expects that agencies and employees will continue to process EEO complaints in a timely manner that will best preserve the legal rights of the parties involved, unless doing so would interfere with mission-critical operations for an agency. Accordingly, the Office of Federal Operations is issuing the following instructions, which will remain in effect until further notice:

1. Agencies will continue all counseling, investigations and other complaint processing set forth in 29 CFR Part 1614, except in circumstances meeting the criteria described below.

2. To the extent practicable, regulatory timeframes concerning the processing of federal sector EEO complaints will continue to be met, wherever feasible. For this purpose, practicable means where the agency and complainant have access to needed witnesses, documents and representation, and where such processing will not interfere with the mission- critical operations of the agency.

3. The regulatory timeframes set forth in 29 C.F.R. Part 1614 will be subject to the equitable tolling provisions set forth in 29 C.F.R. §1614.604(c). Absent mutual agreement, agencies and complainants will be required to document in the record the reason(s) why tolling any of the time limits set forth in 29 CFR Part 1614 is necessary. Such justification will fully be considered by the Commission in any appeal raised in the matter.

4. Agencies and complainants are encouraged to seek mutual agreement with respect to the extension of any timeframes. Where such agreements are reached, they should be reduced to writing and made part of the record. OFO will honor such agreements on appeal, unless they are clearly onerous to one party or otherwise violate the standards for equitable tolling, waiver or estoppel.

5. EEOC Administrative Judges will continue to manage the hearings program. Administrative Judges will continue to hold conferences, manage discovery, refer cases to ADR and settlement, issue summary judgment decisions and,

where appropriate, hold hearings and issue decisions. In light of the National Emergency, either party can seek an extension or other relief from any deadline for good cause shown.

6. The EEOC is deeply concerned about protecting (and committed to ensuring every federal employee continues to have) all their rights during this time of National Emergency. To that end, EEOC asks agency EEO offices to continue counseling employees, accepting their discrimination complaints, and investigating these complaints to the fullest extent possible without undermining mission-critical functions. We ask agencies not to issue final actions on any EEO complaint, unless the investigation is complete and the Complainant has requested that the final action be issued.

7. EEOC will continue to prepare appellate decisions but will not mail those decisions. A Complainant who provides an e-mail address and waives first class mailing may request the decision via e-mail to **ofo.eeoc@eeoc.gov**. The Commission is extremely cognizant of preserving a party's right to file a civil action in U.S. District Court. Given the current National Emergency, the Commission is suspending issuance of all appellate decisions via the U. S. mail until further notice in order to best preserve those rights.

8. Until further notice, OFO does not have access to U.S. Mail; rather, we ask that all submissions and communications from both agencies and complainants be digital, via the Public Portal/FEDSEP. We ask those who submitted items via U.S. Mail on or after March 6, 2020 to resubmit them via the Public Portal/FEDSEP.

9. The Commission supports and encourages the use of digital documents and electronic signatures. A digital document used by a person, agency, or other entity shall have the same force and effect as those documents not produced by electronic means. "Electronic signature" means any digital symbol, sound, or process attached to or logically associated with a digital record and executed or adopted by a person with the intent to sign the record.

10. Each agency subject to the regulations at 29 CFR Part 1614 is directed to forward a copy of this notice, using the most effective available method, to each Complainant with a pending EEO matter and to each person who hereafter contacts an agency EEO counselor or otherwise enters into the agency's EEO process.

11. For more Commission information and resources, please go to our COVID-19 information links at: **https://www.eeoc.gov/coronavirus (https://www.eeoc.gov/coronavirus)**