# Greenfield Stein & Senior, LLP
## Attorneys at Law
### 600 Third Avenue, New York, N.Y. 10016
#### www.gss-law.com

**ANNE C. BEDERKA**
**HARVEY E. CORN**
**GARY B. FREIDMAN**
**ANGELO M. GRASSO**
**ALAN E. KATZ**
**CHARLES T. SCOTT**
**PAUL T. SHOEMAKER**

<u>COUNSEL:</u>
ALAN C. ROTHFELD

<u>RETIRED:</u>
NORMAN A. SENIOR
KENNETH L. STEIN

TEL: (212) 818-9600
FAX: (212) 818-1264
DIRECT DIAL: (212) 818-9280
PSHOEMAKER@GSS-LAW.COM

October 7, 2021

**VIA ECF**
Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    Tassy v. Buttigieg
                <u>CV-21-577 (BMC)</u>

Dear Judge Cogan:

      I am writing on behalf of Plaintiff Jean-Claude Tassy in response to the Defendant's letter of October 1 ("Letter"). There is no basis for a summary judgment motion. The Defendant's "Factual Background" (Letter at pp. 1-2) is a one-sided presentation of Defendant's version of the facts which is inappropriate because it entirely disregards the Plaintiff's evidence and the inferences for which Plaintiff argues. Summary judgment requires that the non-moving party's version of the facts – if supported by evidence and inferences – must be accepted. The moving party's evidence must be entirely disregarded to the extent that it is contrary to the non-moving party's evidence and inferences because the jury has the option of rejecting any such evidence proffered by the moving party.

      Here, Plaintiff denies that he "lacked candor" in his communications with FAA personnel, that his actions "placed the FAA at risk," that the FAA "examined relevant factors" and "discussed appropriate penalties," and that the "Plaintiff voluntarily retired." (Quotations are from the "Factual Background" section of the Letter.)

      Among other things, the FAA's witnesses could not identify any discussions about "appropriate penalties" during their depositions and instead asserted in conclusory fashion that termination of Plaintiff's employment was the only remedy that was considered. Nor could the FAA's witnesses explain how the Plaintiff's tape recordings of interactions with other FAA employees in any way "placed the FAA at risk" and it is self-evident that they did not. Nor did they establish any material lack of "candor" on the part of the Plaintiff. He acknowledged

Honorable Brian M. Cogan
October 7, 2021
Page 2

making tape recordings and his misstatement about the mechanism he used to make the recordings (whether it was a personal recording device and/or a cell phone) can be attributed to confusion on his part and is immaterial – as long as he acknowledges that he made recordings, it is immaterial what device he used to do so. Plaintiff also denies that he retired "voluntarily." He retired when confronted with the threat of termination and loss of his pension and benefits for actions he could not deny. He was offered a hearing, but in the context of the nature of the charges and the adamant ongoing hostility of his managers, that was meaningless and his decision to retire was coerced, not voluntary.

Most significantly, the FAA failed to examine "relevant factors." The Letter does not acknowledge that Plaintiff has consistently taken the position that he made the recordings in order to gather evidence to support his claims of discrimination. This factor was not considered and Plaintiff instead was treated as if he were an agent of a foreign government trying to steal official secrets. The context of the recordings was not taken into account. Plaintiff sought to capture instances of abuse and mistreatment and also admissions by his managers. He was successful in the latter regard, and his recording of his manager Erik Anderson is important evidence in support of his discrimination and retaliation claims. Plaintiff maintains that his procurement of such evidence enraged his superiors and motivated them to terminate his employment.

Defendant's argument under the heading Defendant's Motion for Summary Judgment (Letter at pp. 2-3) similarly proceeds to assert Defendant's factual contentions and inferences as if they had relevance to a motion for summary judgment. Again, they do not have any relevance because they may be entirely rejected by the jury and therefore they should be disregarded in connection with a motion for summary judgment. Thus, Defendant again asserts that Plaintiff decided to "voluntarily retire," again without considering the context: i.e., of the managers' refusal to respond to Plaintiff's prior complaints of harassment and discrimination, Anderson's threats of termination made during the tape-recorded conversation, the risk of loss of Plaintiff's pension and benefits, the failure of the FAA to acknowledge the purpose of the tape recordings, its treatment of Plaintiff as if he were a spy, and other factors which made the decision involuntary.

Defendant then cites a deposition answer where Plaintiff said: "I don't think there is any connection in the EEO with the removal…." (Letter at p.3) and argues that Plaintiff thereby acknowledged that he has no claim for retaliation. That, however, is not a fair and reasonable inference. Counsel did not ask Plaintiff whether he formally and fully waived and released any claim of retaliation. Nor did Plaintiff say that he was doing so. His answer can more reasonably be interpreted to mean that he did not believe that the EEO people with whom he had dealt had told his manager to fire him such that he saw no connection between the EEO and his removal. Plaintiff has repeatedly asserted his belief that his manager had a retaliatory motive and the quoted snippet of testimony does not contradict those assertions.

Defendant also challenges the timeline, saying that the termination was 18 months after Plaintiff's initial EEO filing. However, the EEO's rejection of Plaintiff's initial claim was issued only in February of 2020, immediately prior to the issuance of the notice of proposed removal. Plaintiff maintains that it is appropriate to infer that management waited for the outcome of the EEO proceeding and, when it was favorable, then felt free to retaliate.

Furthermore, this argument ignores the fact that the retaliation was related to Plaintiff's other actions – not just his filing of the EEO complaint – i.e., his tape recording of his manager and others in order to gather evidence to support his EEO complaint.

Finally, Defendant asserts that no similarly situated employee who engaged in similar conduct was treated differently. Here the Defendant is on particularly shaky ground. The FAA witnesses identified only a few situations in which employees were charged with making improper tape recordings, and the only penalty imposed on any of those employees as far as the FAA witnesses were aware, was a five-day suspension. This suggests that termination was way out of line as a penalty. Moreover, the question of who was similarly situated is a question for the jury that requires presentation and evaluation of evidence, not conclusory assertions of counsel.

Some years ago, Judge Weinfeld noted that: "Rigid enforcement against retaliatory action is required to assure the effectiveness of the [Civil Rights] Act." *EEOC v. Kallir, Philips, Ross, Inc.*, 401 F.Supp. 66, 72 (S.D.N.Y. 1975), *aff'd*, 559 F.2d 1203 (2d Cir. 1977), *cert. denied*, 434 U.S. 920. In *Kallir*, Judge Weinfeld cited and helped to establish some of the fundamental principles applicable to retaliation claims, including that a defendant engages in unlawful retaliation if it discharges a plaintiff "at least in part because she engaged in…protected activities.…" 401 F. Supp. at 71 and 72, n.17. In other words, retaliation need not be shown to be the sole motive and a claim of retaliation should be sustained where retaliation was any part of the employer's motivation. Thus, Plaintiff need not disprove Defendant's contention that it was concerned about the tape recording per se. Instead, Plaintiff need only show that retaliation was at least part of the reason why Defendant terminated Plaintiff's employment. Further, Judge Weinfeld rejected the employer's assertion that the plaintiff had engaged in disruptive conduct, finding the employer's assertion to be a pretext for the termination, and holding that an employee's conduct would have to be "excessive and…deliberately calculated to inflict needless economic hardship on the employer" before the employee's actions would lose the status of protected activity. 401 F.Supp. at 71-72. Defendant does not contend that Plaintiff made the tape recordings in order to inflict needless economic hardship.

*Kallir* was a bench trial, but, in non-bench trials, the question of whether a plaintiff's actions constituted protected activity may be a question for the jury. *See*, *e.g.*, *Grant v. Hazlett Strip-Casting Corp.*, 880 F.2d 1564, 1570 (2d Cir. 1989). In *Grant*, the Court of Appeals also noted that, in terms of protected activity, "Congress sought to protect a wide range of activity in addition to the filing of a formal complaint." 880 F.2d at 1569. It has been held that where an employee records workplace conversations in order to preserve evidence to support an ongoing lawsuit against his employer, such activity is protected. *Gallegos v. Elite Model Mgmt. Corp.*, 781 N.Y.S.2d 624 (Sup. Ct. N.Y. Co. 2004), *aff'd as modified*, 807 N.Y.S.2d 44 (1st Dep't 2005). Moreover, the fact that the employer has a rule against recording does not destroy the employee's right to engage in protected activity. *See, e.g., Whole Foods Market Group, Inc. v. NLRB*, 691 Fed. Appx. 49 (2d Cir. 2017) (upholding finding that employer's policy barring tape recording violated the NLRA because the policy prohibited protected activity). When viewed in the context of Plaintiff's evidence and inferences, it is clear that there is no basis for summary judgment in favor of the Defendant.

Honorable Brian M. Cogan
October 7, 2021
Page 4

                                                  Respectfully submitted,

                                                 *Paul T. Shoemaker*

                                                 Paul T. Shoemaker

PTS/hf