```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
  JEAN-CLAUDE TASSY,                                        :
                                                            :   MEMORANDUM DECISION AND
                                  Plaintiff,                :   ORDER
                                                            :
            - against –                                     :   21-cv-577 (BMC)
                                                            :
                                                            :
  PETER BUTTIGIEG,                                          :
                                                            :
                                  Defendant.                :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff Jean-Claude Tassy, a former employee of the Federal Aviation Administration ("FAA"), brings suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, asserting claims of retaliation and constructive discharge. He alleges that the FAA issued a Notice of Proposed Removal ("NOPR") in retaliation for his filing a complaint with the agency's Equal Employment Office ("EEO"), thereby forcing him to retire.

For the reasons below, defendant's motion for summary judgment is GRANTED.

BACKGROUND

I.  **Factual Background**

  A.  **Plaintiff's First EEO Claim**

Plaintiff was employed by the FAA from August 2012 until his retirement on April 3, 2020. In 2015, plaintiff was promoted to the position of Aviation Safety Inspector in training at the FAA Farmingdale, New York Flight Standards District Office ("FAA Farmingdale FSDO"). He held this position until his retirement.

On January 8, 2019, plaintiff filed an EEO claim alleging that he had suffered disparate treatment and a hostile work environment because of his race, color, and national origin. On February 18, 2020, the agency issued its decision rejecting his claims. Plaintiff then brought suit on those claims in this Court. This Court dismissed those claims on summary judgment, finding his disparate treatment claim time-barred, and that his hostile work environment claim failed on the merits. The Second Circuit affirmed. See Tassy v. Buttigieg, 540 F. Supp. 3d 228, 240 (E.D.N.Y. 2021), aff'd, 51 F.4th 521, 535 (2d Cir. 2022).

### B. Plaintiff's Second EEO Claim

On August 15, 2019, approximately six months after plaintiff filed his initial EEO complaint, FAA employees Stanley Routh and Michael Torres observed plaintiff with a recording device at work. FAA policies, of which plaintiff was well-aware,[1] prohibit the use of unauthorized recording devices – including covert taping of workplace meetings and conversations – due to confidentiality, security, and reputational concerns.[2] Routh and Torres immediately prepared memoranda regarding plaintiff's activities and notified one of plaintiff's supervisors, Erik Anderson.

The following day, another one of plaintiff's supervisors, Miguel Soto, along with another FAA employee, held an initial investigatory interview with plaintiff concerning Routh's and Torres's reports. At the interview, plaintiff acknowledged that he was required to provide

---

[1] Plaintiff completed training on the FAA's Standards of Conduct in both March 2017 and April 2018, which covered these policies. Plaintiff also reviewed the Annual Standards of Conduct Briefing for FAA Farmingdale FSDO in February 2016 and August 2018. In addition, plaintiff was notified by his colleague in August 2016 that secretly recording conversations was against FAA rules.

[2] The FAA's Standards of Conduct, Section 15(b), states that FAA employees "in the conduct of their official duties may not use . . . recording . . . equipment of any kind." The Policy Manual further provides that "[c]overt/secret taping, either audio or video, of any conversation or meeting occurring at the workplace or conversation or meetings off-site that deal with workplace issues and matters of official concern are prohibited."

2

truthful information during the investigation and that if he failed to do so he could face disciplinary action, including termination.[3]  During the interview, plaintiff admitted that he had secretly used his cell phone and another personal recording device to tape workplace conversations.  Based upon plaintiff's admissions, FAA Farmingdale FSDO referred the matter to the FAA's Office of Security and Hazardous Materials Safety to investigate plaintiff's recording activities and other potential misconduct.

As part of the investigation, plaintiff's government computer was forensically examined.  This turned up additional misconduct on the part of plaintiff, including that between October and August 2019, he had attached his personal recording device to his government computer 77 times.  This conduct is expressly prohibited by FAA policy due to security and confidentiality concerns,[4] of which, again, plaintiff was aware.[5]

On October 25, plaintiff was interviewed by the FAA investigator, DOT Special Agent Jennifer Aszalos.  He received a similar warning that his responses must be truthful.  Plaintiff admitted that he had used personal recording devices to secretly record conversations since he started at FAA Farmingdale FSDO, including conversations during field inspections as well as "everything at the FAA Academy."  But contrary to his admission in his initial interview that he

---

[3] FAA Human Resources Policy Manual 4.1, Standards of Conduct, Section 13, provides that FAA employees must uphold a duty to be truthful.

[4] FAA Order 1370.121, Information Security and Privacy Program and Policy, Section 19, states that "[a]ll portable and mobile devices used to connect to any FAA computing resources or processing of FAA information must be Government Furnished Equipment."  The policy provides, alternatively, that if the device is non-Government Furnished Equipment, an FAA employee must "have the expressed, written consent of the FAA . . . [Chief Information Officer] . . . to use non-GFE [(Government Furnished Equipment)] prior to their accessing any FAA system or information."  In addition, FAA Order 1370.121, Rules of Behavior, Section 3, states: "I will not . . . [u]se a personally owned equipment (POE) . . . or other non-Government Furnished Equipment (non-GFE) to access FAA information systems and networks or process FAA information unless I am given express written approval from the FAA Chief Information Office (CIO) or designee."  There is nothing in the record to suggest that plaintiff had prior authorization to connect his personal recording device to his government computer.

[5] In August 2017 and 2018, plaintiff completed FAA Information Security & Privacy Awareness Training, which covered these policies.

3

had used his cell phone to record conversations, plaintiff denied using his cell phone to make recordings, contending that he only used a digital voice recorder.

On December 6, 2019, the FAA investigator issued a final Security Report of Investigation. This report was received by FAA Division Manager Gerald Boots and sent to Anderson. Anderson forwarded the report to employees from FAA's Human Resources department, Susan Schmitz and Tonya Harper. Over several weeks, Anderson and the Human Resources personnel reviewed the investigation report. In January 2020, this group discussed the charges against plaintiff and the appropriate penalty, considering the table of penalties and the mitigating factors.[6] The decision was made to issue a NOPR to plaintiff based on three charges: (1) unauthorized recording; (2) misuse of government property; and (3) lack of candor based on plaintiff's statements that he only used his tape recorder, and not his cell phone, to record conversations with colleagues.[7]

Although the decision to issue the NOPR was made in January, the parties continued to work on and revise the document before sending it to plaintiff on March 6, 2020. The NOPR explained that plaintiff could reply within 15 days and "submit affidavits and other documentary evidence" which would be given "[f]ull consideration."

---

[6] Plaintiff argues that this fact is disputed, as "[n]one of [the individuals involved] could provide any details of any such discussion and they instead described a process where Mr. Anderson recommended termination and Ms. Schmitz and Ms. Harper went along with that." The testimony does not support this. Harper testified that she remembered discussing "a policy range of possibly suspension, possibly to removal," that they "probably looked at the tables of penalties," and that "Anderson would have certainly considered the Douglas [f]actors." Schmitz testified that while Anderson "made [the] determination" to remove plaintiff, she later clarified that she "[didn't] know who said it first" and that termination was consistent with her "advice and guidance" after "go[ing] through a process of discussing the different charges and . . . the Douglas [f]actors that we look at in terms of what would be appropriate in this case." The Douglas factors are a list of relevant factors that must be assessed in determining the severity of discipline, as set forth by the Merit Systems Protection Board in Douglas vs. Veterans Administration, 5 M.S.P.R. 280 (1981).

[7] Defendant contends that plaintiff could not have been telling the truth about only having used the voice recorder. Plaintiff not only made contradictory statements at his interviews as to whether he used his cell phone to record conversations, but he also stated that he began recording conversations in 2015, even though the model of voice recorder that plaintiff used was not released until a year later.

On March 18, 2020, plaintiff e-mailed a group at the FAA stating that he was "interested in an immediate retirement." That same day, he also requested an extension to reply to the NOPR and that he be provided all the information relied upon in the investigation. His request for an extension was granted, and on March 23, 2020, he was provided copies of the information he requested. Despite the extension, plaintiff did not request a hearing or an opportunity to present evidence, nor did he ultimately present any defenses or mitigating factors. Instead, on April 6, 2020, a union representative at the FAA informed plaintiff's supervisors that plaintiff intended to retire from the FAA as soon as possible and that plaintiff had submitted retirement paperwork with an effective date of April 3, 2020.

After his retirement, plaintiff filed a second EEO complaint against the FAA alleging that he had been constructively discharged in a retaliatory fashion. Plaintiff was issued right-to-sue letters, and brought his constructive discharge and retaliation claims here. Discovery having been completed, defendant has moved for summary judgment.

## DISCUSSION

### I. Legal Standard

Pursuant to Fed. R. Civ. P. Rule 56, a court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A dispute as to a material fact is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

Accordingly, a party opposing summary judgment must put forward some "concrete evidence from which a reasonable juror could return a verdict in his favor." Anderson, 477 U.S. at 256; see Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) ("At the summary judgment stage, a nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful." (internal quotation marks omitted)).  When deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id.

**II.     Retaliation**

    **A.  Legal Standard**

Title VII forbids an employer from discriminating against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).

Retaliation claims are analyzed using the familiar McDonnell Douglas burden-shifting framework.  See Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 843-44 (2d Cir. 2013) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).  To make out a *prima facie* case of retaliation, a plaintiff must establish: "(1) that [he] participated in an activity protected by Title VII, (2) that [his] participation was known to [his] employer, (3) that [his] employer thereafter subjected [him] to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action." Kaytor v. Elec.

Boat Corp., 609 F.3d 537, 552 (2d Cir. 2010). A plaintiff's burden of proof at the *prima facie* stage is "de minimis." Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010).

If plaintiff's initial burden is met, "a presumption of retaliation" arises, which the employer "may rebut by articulating a legitimate, non-retaliatory reason for the adverse employment action." Ya-Chen Chen v. City Univ. of New York, 805 F.3d 59, 70 (2d Cir. 2015) (internal quotation marks omitted). If the employer provides such a reason, "the presumption of retaliation dissipates," and the burden shifts back to the plaintiff to prove "that the desire to retaliate was the but-for cause of the challenged employment action." Id. (citation omitted); see also Zann Kwan, 737 F.3d at 845 (a plaintiff must prove that retaliation for his protected activity was a "but-for" cause of his termination, "not simply a substantial or motivating factor in the employer's decision" (internal quotation marks omitted)).

At the third step, but-for causation does not "require proof that retaliation was the only cause of the employer's action – it is enough that the adverse action would not have occurred in the absence of the retaliatory motive." Nieblas-Love v. N.Y.C. Hous. Auth., 165 F. Supp. 3d 51, 70 (S.D.N.Y. 2016). A "plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action" such that "a reasonable juror could conclude that the explanations were a pretext for a prohibited reason." Zann Kwan, 737 F.3d at 846. But a plaintiff must provide more than mere speculation to survive summary judgment. See, e.g., Palencar v. New York Power Auth., 834 F. App'x 647, 650 (2d Cir. 2020) ("To defeat summary judgment, the plaintiff must produce enough evidence to support a rational finding not only that the employer's nondiscriminatory reasons were false

7

but also that more likely than not discrimination was the real reason for the employment actions." (internal quotation marks omitted)).

### B. Analysis

It is undisputed that plaintiff, by filing his initial EEO complaint, participated in an activity protected by Title VII, and that his participation was known to his employer. [8] Therefore, only the third and fourth prongs of the *prima facie* case are at issue here. But plaintiff can satisfy neither of those prongs.

First, it is not clear that plaintiff suffered an adverse employment action. The issuance of the NOPR itself is not sufficient to constitute an adverse employment action. See Weisbecker v. Sayville Union Free Sch. Dist., 890 F. Supp. 2d 215, 234 (E.D.N.Y. 2012) ("Threats of termination do not, by themselves, constitute an adverse employment action."). And although plaintiff claims that he was constructively discharged, the record reflects that he failed to take advantage of the appeal process. He asserts that this is because he was told by his union

---

[8] Plaintiff argues that he actually engaged in two separate protected activities: filing his initial EEO complaint and making the tape recordings. Unquestionably, the former is a protected activity, and defendant was aware of his initial EEO complaint. See Mayers v. Emigrant Bancorp, Inc., 796 F. Supp. 2d 434, 448 (S.D.N.Y. 2011) ("An employee engages in a protected activity when [he] complains of an employment practice that [he] reasonably believes violates the law."). But plaintiff's recording of workplace conversations is not protected activity for a few reasons. First, as "numerous . . . federal courts" have recognized, "the breach of employer confidentiality policies in order to obtain evidence for a discrimination suit does not constitute protected activity." See Johnson v. NewCourtland, Inc., No. 13-cv-4238, 2015 WL 894320, at *7 (E.D. Pa. Mar. 3, 2015). And the cases that plaintiff invokes to support his argument that tape recordings are protected activity are unpersuasive. In Whole Foods Market Group, Inc. v. NLRB, the Second Circuit affirmed a finding by the NLRB that an employer's no-recording policy was overbroad under the NLRA – a statute not at issue here. See 691 Fed. App'x. at 51 (2d Cir. 2017). In Gallegos v. Elite Model Mgmt. Corp., a New York trial court noted that "the [employee's] recordings were the result of protected activity if they were used to acquire evidence of discriminatory activity," citing the Second Circuit's decision in Grant v. Hazelett Strip-Casting Corp., 880 F.2d 1564, 1570 (2d Cir. 1989). See 1 Misc. 3d 907(A), 781 N.Y.S.2d 624 (Sup. Ct. 2004). This well may be the case where an employee does not violate the employer's confidentiality and security policies. But the Second Circuit in Grant recognized that "the employer's right to run his business must be balanced against the rights of the employee to express his grievances and promote his own welfare." See Grant, 880 F.2d at 1570 (citation omitted). And plaintiff's own testimony in the instant action makes clear that at least some of his recordings were not made for purpose of acquiring evidence of discriminatory activity. Therefore, even if a few of the recordings could be construed as protected activity, defendant was entitled to discipline plaintiff for making such recordings in violation of workplace policies, without implicating Title VII.

representative that appeal would be futile. But plaintiff has not explained why this belief would relieve him of the obligation to appeal.

Second, any causal connection between the protected activity of filing his initial EEO complaint and the issuance of the NOPR is speculative. During the investigation, plaintiff openly admitted to violating workplace policies of which he admits he had knowledge – providing independent grounds for termination wholly unrelated to the filing of his EEO complaint.

However, even if we assumed, based on the *de minimis* standard required to demonstrate a *prima facie* case, see Hicks, 593 F.3d at 164, that plaintiff had made the required showing, he would certainly fail at steps two and three of McDonell-Douglas.

Defendant easily meets its burden at the second step to "demonstrate that there were legitimate, non-retaliatory reasons" for the "adverse actions." See Summa v. Hofstra Univ., 708 F.3d 115, 129 (2d Cir. 2013). Defendant points to its findings that plaintiff violated numerous FAA policies as its non-retaliatory reason for issuing the NOPR. Such documented allegations of misconduct are more than sufficient to meet defendant's burden. See Patterson v. Medgar Evers College of City Univ. of N.Y., No. 04-cv-858, 2006 WL 8439705, at *18 (E.D.N.Y. Dec. 19, 2006) ("Plaintiff's documented gross misconduct is a legitimate . . . non-retaliatory basis for her removal from the payroll.").

Where the employer demonstrates a legitimate, non-discriminatory reason, as here, then the burden shifts back to the plaintiff to establish that the "retaliation was a but-for cause of [his] termination, not simply a substantial or motivating factor in the employer's decision." Villetti v. Guidepoint Glob. LLC, No. 21-cv-2059, 2022 WL 2525662, at *4 (2d Cir. July 7, 2022) (internal quotations omitted). Plaintiff has failed to make this showing.

Plaintiff first contends that there is "powerful direct evidence of retaliation," pointing to a tape-recorded conversation between Anderson and him as evidence of animus. But I explicitly rejected plaintiff's interpretation of this conversation already, and plaintiff has no good reason to revisit this decision. See Tassy, 540 F. Supp. 3d at 238, n.8.

Plaintiff similarly fails to provide indirect proof of racially motivated retaliation. Plaintiff contends that there are a number of alleged "weaknesses in the FAA's explanation of its actions", including: "[t]he failure of [plaintiff's] managers to inform the Human Resources personnel truthfully about the facts relating to [his] employment issues and discrimination complaints"; "[t]he failure to meaningfully consider any penalty other than termination"; "[t]he lack of any precedent for such draconian action"; "[t]he lack of independence of the persons involved in the process"; "[t]he failure to consider and evaluate what [plaintiff] had actually recorded and why he had recorded it"; and "[t]he timing of the issuance of the [NOPR]." All of these alleged weaknesses are belied by the factual record or are otherwise irrelevant or insufficient for plaintiff to meet his burden.

First, plaintiff argues that his supervisors didn't inform human resources personnel of "everything they needed to know in order to participate in the termination process." The example plaintiff provides is that one of the human resources employees, Schmitz, testified that she did not believe plaintiff's supervisor, Soto, told her that plaintiff "had complained that he was being excluded from training opportunities." Plaintiff argues that Soto's "concealment of those facts" and his alleged "affirmative misrepresentations about them, reveal a retaliatory state of mind." However, the information that Soto gave to Schmitz was not provided as part of the investigation into plaintiff's unauthorized use of recording devices or the termination process. Soto made these statements in April 2018, well before plaintiff filed his initial EEO complaint. I

10

decline to infer any retaliatory intent on the part of Soto based on conduct that occurred before the protected conduct at issue. Further, nothing in the record suggests that even if human resources personnel had been provided all the information, this would have altered the FAA's decision to issue the NOPR.

Second, plaintiff takes issue with the fact that the "termination decision" was allegedly reached "without any meaningful consideration of lesser penalties." Schmitz did testify that "other possible discipline" or approaches were "[n]ot really" considered. However, she notes that this was because "the charges were so egregious in this case that it seemed clear that removal was the only option." Even so, she recalled "discussing the various charges" and using the "table of penalties" as a guide. She also tried to look to "comparable cases" to determine an appropriate penalty, but she testified that she was unable to find any.[9] For the same reason, plaintiff cannot effectively challenge the decision to issue the NOPR on the basis that there was a "lack of precedent for such draconian action." The reason there was no precedent was not because plaintiff was being punished more severely as a result of retaliation, but that no one had committed the same offenses. This does not suggest retaliation.

Third, plaintiff argues that human resources personnel "were not independent" and "displayed no sensitivity to" plaintiff. Plaintiff points to testimony from Schmitz that her job was to "assist managers" and that she never spoke with plaintiff directly. But plaintiff has provided no evidence to suggest that these individuals failed to reach an objective decision based on the FAA's investigative record. Importantly, several independent employees were also

---

[9] The only other unauthorized recording case concerned an air-traffic controller who depressed a button on his headset for too long during only one instance, and therefore was not comparable.

11

involved in the investigation, including DOT Special Agent Jennifer Aszalos, who authored the Security Report of Investigation, and FAA Division Manager Gerald Boots.

Fourth, the reason why the investigation contains no evaluation of the tape-recorded materials is simple, and clearly non-retaliatory. The FAA did not "bother[] to listen to the tapes or determine what was on them" because plaintiff never provided the tapes to the FAA. If plaintiff had wanted the FAA to evaluate these tapes, he was offered the opportunity to present additional evidence in responding to the NOPR, but he did not take it.

Finally, plaintiff asserts that temporal proximity of the issuance of the NOPR "smacks of retaliation." But the Second Circuit has clarified that "once an employer has proffered non-retaliatory reasons, temporal proximity alone is not enough for a plaintiff to survive summary judgment. See Villetti, 2022 WL 2525662, at *6 (citing El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010)). As plaintiff has provided no other non-speculatory reasons for his belief that the issuance of the NOPR was retaliatory, mere temporal proximity is not enough.

Plaintiff's retaliation claim is therefore dismissed.

## III. Constructive Discharge

Plaintiff also brings a free-standing constructive discharge claim. Such claims "are difficult to establish," and "are routinely rejected by the courts." Wright v. Goldman, Sachs & Co., 387 F. Supp. 2d 314, 325 (S.D.N.Y. 2005).

"Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily." Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 89 (2d Cir. 1996). For purposes of Title VII, a claim of constructive discharge has two basic elements: (i) "[a] plaintiff must prove first that he was discriminated against by his employer to the point

where a reasonable person in his position would have felt compelled to resign," and (ii) a plaintiff "must also show that he actually resigned." Green v. Brennan, 578 U.S. 547, 555 (2016).

As for the first element, a plaintiff must show that a reasonable person would have found the working conditions "intolerable." See Pa. State Police v. Suders, 542 U.S. 129, 134 (2004). A plaintiff cannot satisfy this element by showing "that the working conditions were merely difficult or unpleasant." Simmons-Grant v. Quinn Emanuel Urquhart & Sullivan, LLP, 915 F. Supp. 2d 498, 506 (S.D.N.Y. 2013) (citation omitted); see also Green v. Town of E. Haven, 952 F.3d 394, 404 (2d Cir. 2020) (employer criticism inadequate). A plaintiff must also show that these intolerable working conditions arose under circumstances that support an inference of discriminatory intent. See Green, 578 U.S. at 555-56. To do so, a plaintiff must show either "specific intent" or, at the very least, that "the employer's actions were deliberate and not merely negligent or ineffective." Petrosino v. Bell Atl., 385 F.3d 210, 230 (2d Cir. 2004) (cleaned up). Importantly, "[a]n employee who fails to explore alternative avenues offered by [his] employer before concluding that resignation is the only option cannot make out a claim of constructive discharge." Simmons-Grant, 915 F. Supp. 2d at 506 (citation omitted).

This Court previously rejected plaintiff's hostile work environment claims, and this holding was affirmed by the Second Circuit. Tassy, 540 F. Supp. 3d 228, *aff'd*, 51 F.4th 521 (2d Cir. 2022). Therefore, *a fortiori*, the conditions were not so "intolerable" that plaintiff was forced to quit involuntarily. Cf. Chenette v. Kenneth Cole Prods., Inc., 345 F. App'x 615, 620 (2d Cir. 2009) ("Having failed on her hostile work environment claim, [plaintiff] can neither survive summary judgment on her constructive discharge claim, which requires evidence of even more severe conditions." (internal quotation marks omitted)). Moreover, given that plaintiff

13

chose to resign rather than to challenge the NOPR, the Court finds that he did not avail himself of all "alternative avenues" that were available.  See Simmons-Grant, 915 F. Supp. 2d at 506.

Therefore, plaintiff's constructive discharge claim is also dismissed.

## CONCLUSION

Defendant's motion for summary judgment is granted.  The case is dismissed.

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
       January 7, 2023